N.Y.S.D. Case #
09-cr-0524(JSR)

11-3254-cr(L)
United States v. Umeh



# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of June, two thousand thirteen.

PRESENT:   CHESTER J. STRAUB,
           REENA RAGGI,
           CHRISTOPHER F. DRONEY,
                *Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 27, 2013

-----------------------------------------------------------------------
UNITED STATES OF AMERICA,
           *Appellee*,

           v.

CHIGBO PETER UMEH, a/k/a Emeka Okonkwo, a/k/a Chigbogu Umehwunne, a/k/a Mike, a/k/a Chibue, a/k/a El Negro, KONSTANTIN YAROSHENKO,
           *Defendant-Appellant*s,

JORGE IVAN SALAZAR CASTANO, a/k/a El Chavel, KUDUFIA MAWUKO, a/k/a DET Marco, MARCEL ACEVEDO SARMIENTO, a/k/a JJ, a/k/a Juan Restrepo, a/k/a Jota, NATHANIEL FRENCH, a/k/a the Frenchman, a/k/a the Expert,
           *Defendants*.
-----------------------------------------------------------------------

No. 11-3254-cr(L);
11-3898-cr(CON)

MANDATE ISSUED ON 08/27/2013

| | |
|---|---|
| APPEARING FOR APPELLANTS: | MARSHA R. TAUBENHAUS, ESQ., New York, New York, for Appellant Chigbo Peter Umeh. |
| | ALEXEY V. TARASOV, ESQ., Houston, Texas, for Appellant Konstantin Yaroshenko. |
| APPEARING FOR APPELLEE: | RANDALL W. JACKSON (Justin S. Weddle, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York. |

Appeal from judgments of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments entered on August 8, 2011, and September 13, 2011 are AFFIRMED.

Chigbo Peter Umeh and Konstantin Yaroshenko appeal from their respective convictions for conspiracy to distribute more than five kilograms of cocaine with knowledge that it would be imported into the United States, see 21 U.S.C. §§ 959(a), 963. Defendants challenge (1) the sufficiency of the evidence supporting their convictions, (2) the adequacy of the statutory mens rea requirement and the district court's mens rea charge to afford due process, (3) the district court's failure to give multiple-conspiracy and unanimity instructions, (4) the purported lack of a jurisdictional nexus between defendants' extraterritorial actions and the United States sufficient to satisfy due process, and (5) the circumstances surrounding

their arrest and extradition.[1]  In rejecting each of these challenges, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.   <u>Sufficiency of the Evidence</u>

Yaroshenko challenges the sufficiency of the evidence presented at trial, as to both the agreement element of conspiracy and the scienter element of the § 959(a) crime that was the conspiratorial objective.[2]  Such a challenge faces formidable obstacles, for we must "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor," <u>United States v. Chavez</u>, 549 F.3d 119, 124 (2d Cir. 2008), and deferring "to the jury's determination of the weight of the evidence," <u>United States v. Torres</u>, 604 F.3d 58, 66 (2d Cir. 2010) (internal quotation marks omitted).  Ultimately, a conviction must be upheld if "<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original).  Applying this standard of review, we reject both of Yaroshenko's arguments as to the sufficiency of the evidence.

---

[1] Although Umeh argues only jurisdiction and <u>mens rea</u> in his brief, he states that he joins Yaroshenko's brief in its entirety.  Thus, in deciding an issue as to Yaroshenko, we also decide it as to Umeh, distinguishing between the two defendants' positions only where they are materially different.

[2] Yaroshenko's arguments as to sufficiency are largely inapplicable to Umeh.  Insofar as Umeh makes these arguments on his own behalf by incorporation, we reject them.

3

> a.  The Evidence Was Sufficient To Establish that Yaroshenko Agreed To Join the Conspiracy

Yaroshenko contends that the evidence was insufficient to prove that he agreed to join the charged conspiracy. Because "a conspiracy by its very nature is a secretive operation," United States v. Santos, 541 F.3d 63, 70 (2d Cir. 2008) (internal quotation marks omitted), a defendant's agreement to join in such a scheme can reasonably be inferred from circumstantial evidence, see In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93, 113 (2d Cir. 2008). Here, there was more than sufficient circumstantial evidence to permit a rational trier of fact to find that Yaroshenko joined the charged conspiracy. Specifically, in a recorded May 13, 2010 meeting attended by Umeh, Yaroshenko, and a DEA confidential source, Yaroshenko approved specific aspects of the distribution conspiracy and helped develop pretexts for a planned flight when he would be transporting cocaine in furtherance of the conspiracy. During the same meeting, Yaroshenko stated that he expected to be paid "four million five hundred" thousand dollars for his part in the scheme. Umeh App'x 65. Umeh agreed, leaving the conspirators to haggle only over how much Yaroshenko would be paid "up front." Id. at 66, 69–70. At the close of the meeting, Yaroshenko reaffirmed his approval of the plan to use diplomatic pouches to transport the drugs, observing, "[j]ust now I don't see zero problem." Id. at 71.

When every possible inference is drawn in the government's favor, Yaroshenko fails to demonstrate that no rational trier of fact could find from such evidence that he agreed to join with Umeh in the charged conspiracy. Even if the conspirators had not yet agreed on how much of the $4.5 million would be paid in advance, they had agreed on the criminal activity that was to be undertaken and the overall price. That is sufficient to allow a jury to find the "tacit understanding" among the conspirators necessary to prove their agreement to a common criminal scheme. United States v. Desimone, 119 F.3d 217, 223 (2d Cir. 1997).

  b.  The Evidence Was Sufficient To Establish Yaroshenko's Knowledge that a Portion of the Cocaine Would Go To the United States

Yaroshenko contends that the evidence is insufficient to demonstrate his knowledge that some of the drugs in question would ultimately be imported into the United States. See 21 U.S.C. § 959(a)(2). This claim fails in light of Yaroshenko's participation in numerous conversations discussing the intent to export to the United States some of the drugs that he would fly into Ghana. Indeed, during a March 5, 2010 meeting in Kiev, Yaroshenko is recorded saying "uh huh" when the confidential source, posing as the associate of a purportedly corrupt Liberian official, discusses his intent to send "200, 300 kilos" to "clients in America." Supp. App. 127. Yaroshenko responds similarly when, the next day, the confidential informant explains that "every shipment I get 300 . . . and then from [Accra] I send to New York and that is my profit." Id. at 134. At the May 13, 2010 meeting already discussed, Yaroshenko was present when the informant discussed in detail the plan to send some of the cocaine that Yaroshenko would fly into Ghana onward to the United States, concealed in diplomatic pouches.

5

Insofar as Yaroshenko now contends that he did not understand the import of these remarks, or that they could be interpreted to refer to something other than a plan to import cocaine into the United States, these arguments are unavailing. We must assume that the jury construed the conversations in the light most favorable to the government. See United States v. Chavez, 549 F.3d at 124.

2.     *Mens Rea*

Yaroshenko and Umeh raise various mens rea challenges to their convictions. Because these arguments were not raised in the district court, we review them only for plain error, and find none. See Fed. R. Crim. P. 52(b); United States v. Marcus, 130 S. Ct. 2159, 2164 (2010).

Yaroshenko's challenge reduces to a single contention: that mere knowledge that narcotics will be imported into the United States, see 21 U.S.C. § 959(a)(2), is constitutionally insufficient to support a conviction; the government must further prove his intent to harm American interests.

Because Yaroshenko was charged with conspiracy to violate § 959, see 21 U.S.C. § 963, the government's mens rea burden was twofold, requiring proof that Yaroshenko (1) intentionally joined in the charged conspiracy, (2) knowing or intending that some of the drugs to be distributed would be unlawfully imported into the United States. See id. § 959(a)(1), (2). The district court so instructed the jury. See Tr. 1520. Yaroshenko contends that this instruction was constitutionally insufficient, but United States v. Al Kassar, 660 F.3d 108 (2d Cir. 2011), the sole case on which he relies, defeats rather than supports his

6

contention. In Al Kassar, we explicitly approved a charge that set forth "both scienter requirements" that the jury had to find—i.e., the intention to join the conspiracy, and the scienter element of the underlying offense. Id. at 127. Insofar as the district court similarly instructed the jury here, the challenged charge was "not erroneous, let alone plainly so." Id. at 128.[3]

Umeh nevertheless contends that the "knowledge" requirement of § 959(a)(2) cannot be satisfied by proof that a defendant believed in something that is objectively untrue. This argument is also defeated by Al Kassar, in which the defendants were convicted of conspiring to sell missiles to what they believed was a terrorist organization. We ruled that the fact that their conspiracy was never going to succeed because the sale was part of a government-orchestrated sting operation was "irrelevant" to their guilt. United States v. Al Kassar, 660 F.3d at 120; see also United States v. Rosa, 17 F.3d 1531, 1543 (2d Cir. 1994) (recognizing that defendant may be convicted of conspiracy even if commission of substantive offense "was impossible because . . . the coconspirators were mistaken in their view of the facts").

3.  Multiple Conspiracies and Unanimity

Yaroshenko complains that (1) the record evidence established multiple conspiracies, some of which excluded him; (2) the district court erred in failing to give a multiple-

---

[3] We also reject as entirely meritless Yaroshenko's argument that the knowledge requirement of § 959 cannot supply the mens rea for a conviction because it also serves as the statute's jurisdictional element.

conspiracies charge; and (3) the district court erred in failing to give a specific unanimity charge.  On de novo review of the first two issues, insofar as they raise questions of law, we reject them as without merit.  As for the third issue, because neither defendant requested a unanimity instruction in the district court, we review only for plain error and find none here. See Fed. R. Crim. P. 52(b); United States v. Alli-Balogun, 72 F.3d 9, 11–12 (2d Cir. 1995) (reviewing for plain error forfeited claim regarding district court's failure to give unanimity instruction).

The record evidence, viewed in the light most favorable to the government, see United States v. Berger, 224 F.3d 107, 114 (2d Cir. 2000), in fact supports a jury finding that there was a single criminal purpose—the distribution of huge quantities of cocaine throughout the globe—served by various schemes that were interdependent by virtue of Umeh's place at their hub, a common point of origin for the cocaine, and the crucial support of supposedly corrupt Liberian government officials.  This overall purpose was often discussed at meetings where participants in more than one aspect of the scheme were present.  See United States v. Needham, 604 F.3d 673, 680 (2d Cir. 2010) ("[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." (alteration in original) (internal quotation marks omitted)); United States v. Johansen, 56 F.3d 347, 351 (2d Cir. 1995).

Even if the record showed multiple conspiracies, however, Yaroshenko would not be entitled to relief on appeal absent a showing of substantial prejudice.  See id. (identifying

factors relevant to prejudice assessment). He cannot show such prejudice here because the trial court instructed the jury that the government had to prove the <u>charged</u> conspiracy beyond a reasonable doubt, and the evidence was sufficient to permit a jury to find that it carried this burden. <u>See</u> <u>United States v. Vazquez</u>, 113 F.3d 383, 386 (2d Cir. 1997). In sum, Yaroshenko's challenge is without merit.

As to Yaroshenko's argument that the district court should have given a specific unanimity instruction, he cannot show error, let alone plain error, because overt acts in furtherance of statutorily prohibited narcotics conspiracies "need neither be pleaded nor proven." <u>United States v. Grammatikos</u>, 633 F.2d 1013, 1023 (2d Cir. 1980).

4. <u>Dismissal of the Indictment</u>

Yaroshenko and Umeh each contend that due process demanded dismissal of the charged conspiracy because their activities lacked the constitutionally requisite nexus to the United States. Yaroshenko also argues that (1) his extraterritorial arrest violated the Mansfield Amendment, <u>see</u> 22 U.S.C. § 2291(c)(1); (2) the circumstances surrounding his arrest put this case outside the <u>Ker-Frisbie</u> doctrine, <u>see</u> <u>Frisbie v. Collins</u>, 342 U.S. 519 (1952); and (3) the government engaged in outrageous misconduct further warranting dismissal of the indictment. Because Yaroshenko moved to dismiss the indictment in the district court, <u>see</u> <u>United States v. Umeh</u>, 762 F. Supp. 2d 658 (S.D.N.Y. 2011) (denying motion), while Umeh did not, we review Yaroshenko's claim <u>de novo</u>, <u>see</u> <u>United States v. Yousef</u>, 327 F.3d 56, 137 (2d Cir. 2003), and Umeh's for plain error. This difference in standards of review does not affect our analysis, however, because we find no error warranting dismissal of the indictment.

9

a. <u>Nexus to the United States</u>

Yaroshenko and Umeh first argue that their wholly extraterritorial conduct lacked the nexus to the United States that due process demands to support their prosecution. See <u>United States v. Yousef</u>, 327 F.3d at 111–12; <u>United States v. Al Kassar</u>, 660 F.3d at 118–19. In <u>Al Kassar</u>, however, we held that prosecution of such extraterritorial conduct in the United States was consistent with due process "[i]f an undercover operation exposes criminal activity that targets U.S. citizens or interests or threatens the security or government functions of the United States." <u>Id.</u> at 118. In this case, the defendants conspired to distribute drugs with knowledge that they would be exported to the United States, conduct that clearly falls within <u>Al Kassar</u>'s construction of due process. See also <u>United States v. Cohen</u>, 427 F.3d 164, 169 (2d Cir. 2005) (rejecting "casual invocation of constitutional . . . limitations on the extraterritorial application of federal laws designed to combat the distribution and importation of drugs into the United States," and observing that "of those courts that have directly considered the extraterritorial application of . . . § 963 . . . each has rebuffed attempts to limit the territorial reach of th[is] provision[]").

Yaroshenko and Umeh nevertheless contend that they cannot be prosecuted in United States courts because they lacked the "conscious object to affect adversely American interest." Yaroshenko Br. 43. However, the jury found, on sufficient evidence, that each defendant joined a conspiracy knowing that the cocaine to be trafficked would reach the United States. Indeed, export to the United States served the defendants' interests, because it served as a means of paying an associate of a purportedly corrupt Liberian official for his

participation in the overall scheme. That this export would never occur is, of course, irrelevant. See United States v. Al Kassar, 660 F.3d at 119 ("[C]onspiracy offenses . . . often result in no palpable harm. Jurisdictional nexus is determined by the aims of the conspiracy, not by its effects.").

Insofar as Yaroshenko contends that he lacked fair warning that his conduct exposed him to prosecution in the United States, we reject this argument for the reasons stated in Al Kassar. See id. (permitting United States prosecution as long as defendants "would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere"). There can be no doubt that the defendants understood their conduct to be criminal.

  b. Mansfield Amendment

Yaroshenko argues that his arrest in Liberia violated the Mansfield Amendment, which states that "[n]o officer or employee of the United States may directly effect an arrest in any foreign country as part of any foreign police action with respect to narcotics control efforts, notwithstanding any other provision of law." 22 U.S.C. § 2291(c)(1). This argument fails because appellants were arrested by officers of the Republic of Liberia National Security Agency (RLNSA), not by United States officers. See Tr. 177–78.

  c. *Ker-Frisbie* Doctrine

It is settled law that neither police brutality nor abduction by government officers can support a jurisdictional challenge. See United States v. Alvarez-Machain, 504 U.S. 655, 662 (1992) (holding that, despite defendant's forcible abduction from Mexico by United States

11

agents, "the court need not inquire as to how respondent came before it"); Frisbie v. Collins, 342 U.S. at 522 (1952); Ker v. Illinois, 119 U.S. 436, 444 (1886). Yaroshenko attempts to fit this case within each of two exceptions to the so-called "Ker-Frisbie" doctrine, one applicable where a treaty was violated in bringing the defendant to the United States, see United States v. Alvarez-Machain, 504 U.S. at 662, and the other in cases of outrageous government misconduct, see United States v. Toscanino, 500 F.2d 267 (2d Cir. 1974). He fails in both respects.

Insofar as Yaroshenko claims that Liberian extradition procedures were not followed in this case, he does not contend that Liberia's expulsion orders were anything but facially valid. In any event, a United States court is not required to assure itself that a foreign country has observed its own internal procedures in delivering up defendants for extradition. See United States v. Hertular, 562 F.3d 433, 450 (2d Cir. 2009) ("United States courts do not review challenges to foreign authorities' compliance with their own domestic law in granting a removal request by this country."); see generally United States v. Lira, 515 F.2d 68, 71–72 (2d Cir. 1975) (holding that United States authorities "were entitled to rely on [a foreign] government's interpretation and enforcement of its own laws. The United States Government did not owe appellant any obligation to enforce his asserted right under Chilean law."). This challenge to the applicability of the Ker-Frisbie doctrine thus fails.

Equally unavailing is Yaroshenko's argument that outrageous government misconduct divests this court of jurisdiction. That argument relies on United States v. Toscanino, 500 F.2d 267, a decision that assumed the "erosion" of the Ker-Frisbie doctrine, id. at 273, a

premise which has been undermined by subsequent decisions of the Supreme Court, see United States v. Alvarez-Machain, 504 U.S. at 660–62, 670 (reaffirming Ker and holding that defendant's abduction did not warrant dismissal of indictment); United States v. Crews, 445 U.S. 463, 474 (1980) (holding prosecution not barred where defendant arrested illegally, because defendant "is not himself a suppressible 'fruit'"). We need not here decide what vitality, if any, Toscanino retains, because our precedent makes plain that it does not foreclose prosecution in factual circumstances similar to those alleged by Yaroshenko. See United States ex rel. Lujan v. Gengler, 510 F.2d 62, 66 (2d Cir. 1975) (declining to apply Toscanino where defendant abducted but not tortured); Brown v. Doe, 2 F.3d 1236, 1242–43 (2d Cir. 1993) (rejecting collateral attack on conviction and holding that defendant's assault while in custody did not bar prosecution). Accordingly, we reject Yaroshenko's challenge to the indictment on the basis of outrageous government misconduct.

4.  Conclusion

We have considered defendants' remaining arguments and reject them as without merit. Accordingly, the judgment of the district court is AFFIRMED and Yaroshenko's motion to supplement the record on appeal is DENIED as moot.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

13